(79 South. 483)

STATE ex rel. JEFFERSON COUNTY v. WALDROP. (6 Div. 766.)

(Supreme Court of Alabama. June 20, 1918.)

1. DISTRICT AND PROSECUTING ATTORNEYS &=> 3(1)—CIRCUIT SOLICITORS—EMPLOYMENT OF ASSISTANTS.

Since the Solicitors' Bill, § 6, expressly authorizes employment by the circuit solicitor of Jefferson county of three deputies whose salaries are to be paid two-thirds by the state and one-third by the county, the specially granted powers of the county solicitor under Acts 1890–91, p. 1148, as to employing assistance, are not applicable to the circuit solicitor in Jefferson county, during vacancy in the office of county solicitor in that county.

2. DISTRICT AND PROSECUTING ATTORNEYS &=> 5(1)—CIRCUIT SOLICITORS—EMPLOYMENT OF ASSISTANTS.

Where county solicitor resigned, leaving vacancy, the circuit solicitor had by Solicitors' Bill, § 10, power to employ a clerk and stenographer, and to incur expenses necessary to properly administer justice, and out of the fees collected, such expenses shall be paid, but the residue must be paid to the state under Code 1907, § 7792.

Appeal from Circuit Court, Jefferson County; H. A. Sharpe, Judge.

Application by the State of Alabama, on the relation of Jefferson County, for mandamus directed to Wm. J. Waldrop as clerk. From a decree denying the writ, petitioner appeals. Reversed, rendered, and remanded.

This case arises upon a judgment rendered by the circuit court of Jefferson county dismissing a petition for mandamus, filed by the relator, directed to William J. Waldrop as clerk of the circuit court, in which a writ was sought, commanding him to pay into the county treasury of Jefferson county solicitor's fees, taxed in criminal cases, prosecuted in the circuit court of Jefferson county, since the 1st day of August, 1917. The petition shows that the clerk of the circuit court has in his possession $1,440, the proceeds of solicitor's fees, taxed in criminal cases, prosecuted in the circuit court, by the circuit solicitor, of the Tenth judicial circuit, collected since the 1st day of August, 1917, on which date, as is shown by the petition, the county solicitor, Hugo Black, resigned. The petition shows that under a series of local laws of Jefferson county the county solicitor's fees taxed in criminal prosecutions were payable into the county treasury to be used by the county solicitor for various purposes, in the suppression of crime, and that under the operation of said local laws said fee when so paid into the county treasury became designated and known as the solicitor's fund. The resignation of Solicitor Black was accepted and took effect on the 1st day of August, 1917, and his successor has never been appointed.

The theory advanced by the petition in this cause is that under section 10 of a general act of the Legislature of 1915, approved September 25, 1915, page 823 of General Acts of 1915, that the local laws or special acts providing for the payment of the county solicitor's fees into the county treasury are made applicable to the circuit solicitor, and that therefore the fees taxed in criminal prosecutions by the circuit solicitor, since Black's resignation, should be paid into the county treasury just as they were under the county solicitor's administration.

The theory of the respondent is that said fees, taxed since the 1st of August, 1917, are payable into the state treasury as provided in section 7792 of the Code of Alabama of 1907.

W. K. Terry, of Birmingham, for appellant. Joseph R. Tate, of Birmingham, for appellee.

SOMERVILLE, J. The solicitor's fees, the disposition of which is sought to be determined by this proceeding, were taxed in the circuit court of Jefferson county in cases prosecuted by the circuit solicitor since August 1, 1917, at which time the office of county solicitor, or "chief prosecuting officer of the county," became vacant by the resignation of its incumbent. Section 7792 of the Code provides:

"All fees which may be by law taxed as solicitors' fees against defendants on convictions secured by a solicitor, who is paid a salary by the state, belong to the state, and, when collected, must be paid into the state treasury."

This statute is clearly determinative of the question, as is conceded by counsel, unless certain local laws for Jefferson county, co-operating with section 10 of the general Solicitors' Bill (Gen. Acts 1915, p. 823), still require the payment of such fees into the county treasury, as a solicitor's fund, or as a part of the fine and forfeiture fund. The local laws in question are referred to and discussed somewhat fully in the case of Henry v. State ex rel. Welch, 200 Ala. 475, 76 South. 417, and we shall here refer to them only to state their substance and effect.

The argument in support of the county's claim is based upon the following premises:

(1) All fees earned by the county solicitor of Jefferson county were, prior to the passage of the general Solicitors' Bill of September 25, 1915, required to be paid into the county treasury. Acts 1886–87, p. 996.

---

(2) A solicitor's fund of $3,000 was provided "to assist the solicitor of Jefferson county in suppressing crime as hereinafter provided." Acts 1890–91, p. 1148. This provision was for the employment of an assistant prosecutor, a clerk or stenographer for the solicitor's office, and the payment of $500 to the solicitor of the Tenth judicial circuit; and, in the discretion of the commissioners' court, the payment of claims for expenses in transporting criminals and state's witnesses from beyond the state.

(3) The act of February 18, 1897 (Acts 1896–97, p. 1121), further provided that the residue of all solicitors' fees paid into the county treasury, after the appropriation of the amount of the solicitor's salary and the $3,000 for assistance in suppressing crime, "shall be paid into the fine and forfeiture fund of said county."

(4) The Act of December 7, 1900 (Acts 1900–01, p. 212), authorizes the county solicitor "to employ any assistance he may require to properly administer justice," and requires the board of revenue to appropriate the needed amount "out of the solicitor's fund" on his affidavit that it was necessary.

(5) The act of July 9, 1915 (Local Acts 1915, p. 23), authorized the county solicitor "to employ any assistance he may deem necessary to properly administer justice, and to fix the compensation to be paid for such assistance, and to incur any expenses he may deem necessary to properly administer justice." And it further provides that "all such necessary expenses shall be paid out of the solicitor's fund of said county," if the fund is sufficient; otherwise the treasurer is required to pay same out of the general fund, but not exceeding the sum of $5,000.

(6) Section 10 of the Solicitors' Bill (Acts 1915, p. 817) provides:

"All general, local or special laws establishing the office of county solicitor, or the office of solicitor of any court by whatsoever name called, except circuit solicitors, and all general, local or special laws in conflict with any of the provisions of this act are hereby expressly repealed; and all provisions of such local act or acts, as well as all of the provisions of all other local or special acts applicable to such county solicitor or solicitors of any court in such county, which are not in conflict herewith, are hereby made applicable in all things to the circuit solicitor of the county where such local acts apply, just as fully and to the same extent as they now apply to such county solicitor or the solicitor of any court in such county."

[1] It is clear that section 6 of the Solicitors' Bill provides exclusively and restrictively for the assistance to be allowed to the circuit solicitor of Jefferson county, viz. three deputy solicitors, whose salaries are to be paid, two-thirds by the state, and one-third by the county. It results that the specially granted powers of the county solicitor with respect to the employment of assistance are not now applicable to the circuit solicitor.

[2] It is perfectly clear, however, that the other specially granted powers of the county solicitor, viz. the power to employ a clerk or stenographer for his own office, and "to incur any expenses he may deem necessary to properly administer justice," are by section 10 of the Solicitors' Bill preserved in favor of the circuit solicitor, and now vested in him. The argument is, that the preservation of these special powers preserves also, by necessary or by reasonable implication, the fund out of which the expenses resulting from their exercise were to be paid, viz. the solicitors' fund derived from solicitor's fees paid into the county treasury. Certainly it must have been the legislative intention that these special expenses should be paid; and, as no provision is made for their payment otherwise, we must presume that they were to be paid, as formerly, by the county out of a solicitors' fund, to be now derived from fees earned by the circuit holder. To this extent such fees, after payment to the county, must be appropriated to the payment of expenses incurred by the circuit solicitor as authorized by law and certified by him. But when this has been done the "applicability" of the special local laws ceases, and section 7792 of the Code requires that the residue of such fees be paid into the state treasury. This, it seems to us, is the only logical solution of the legislative tangle in which the subject has become involved.

It results that the demurrer to the petition for writ of mandamus should have been overruled, and a judgment will be here rendered reversing the judgment of the circuit court, and overruling the demurrers to the petition.

Reversed, rendered, and remanded.

ANDERSON, C. J., and MAYFIELD and THOMAS, JJ., concur.